I'm going to be a little bit liberal in terms of time today, but the advice is don't rush, but don't ramble. And with that, counsel, why don't you go ahead and take it from there. Good morning, excuse me, good afternoon. It's an honor to make this report. I'm Alejandro Mayorkas from the Department of Justice for the government. I'd like to reserve four minutes of my time for a brief comment. You may. Controlling the flow of people and goods across the border is a formidable task. CBP must pertain the ability to control the courts of entry. But the district court's order in this case seeks to limit or eliminate CBP's ability to do its job. The court held that two sections of the Immigration and Nationality Act, such as 1158 and 1225, apply to non-citizens outside the United States. Unless CBP has an inflexible statutory obligation to bring in non-citizens from foreign contiguous territories and expect them for admission, regardless of the court of entry's capacity to do so. That was wrong, and this court should reverse it. Can I ask you about that? So I know the government's position is 1158 applies to immigrants inside the United States, 1157 to those outside the United States. But your comment was it held that 1158 applies to those outside the United States. Is that true, or is it a little more nuanced than that? That the district court said, basically, like, well, they're close enough. They're basically in the United States. What did the district court actually do? The district court held that 1225, which says that immigration officers must inspect those who arrive in or who are physically present in the United States, includes people who are in the process of arriving, which includes people who remain in Mexico or are in foreign contiguous territories. And so that was the import and the actual holding that the district court reached for that. That's incorrect. It's just a matter of statutory interpretation. The statute says that the officers must inspect an officer who is present in or who arrives in the United States. If arrived in means in the United States, then why isn't it just totally dependent? Why do we need to qualify? So the rule against surpluses is one of the primary theories that the district court wanted. But as an initial matter, we can agree that arrives in and physically present in has to be a different concept. But nothing compels or permits an interpretation of either of those terms to be shown outside of that. So as we attended our briefing, the introduction is a longstanding aspect of immigration law that says that those who may be physically present in the United States, as a matter of fact, nevertheless may not be present by operation law. And so if Congress had written a statute that just says someone who is present in, may apply for asylum, or must be inspected by an immigration officer, it risks an interpretation of the statute that would allow the class numbers of people who have just crossed the border and are coming into the country as an arriving U.S. citizen to not be inspected. So as a substantive senator's approach, Congress included both of those phrases to prevent against the risk that the statute would be interpreted so as not to apply to individuals who have just crossed the border. Can I take a back a minute and ask a bigger overarching question? It seems like the PI has been in place for a long time and the Conjunction has now been in place. What is still at stake here? Can you just explain what the status of things is and how many people still would have some effect of anything we do here? DHS is still going through the retrospective aspect of this report with Conjunction. I'm not sure of the precise numbers of how many people remain, but there is still a retrospective obligation to identify people, whether transit will apply to them. And that was, the number I remember was 26,000. Maybe that's been watered down since then. So that was the potential subclass as a whole, which included people who were yet to come into the country, and that was an estimate. So those people who were yet to come into the country at the initial appeal. We're talking right now about just the retrospective aspect of the order, because DHS and the Department of Justice have rescinded the transit rule, so there's no longer an occasion to apply that rule prospectively. The prospective aspect of the injunction that requires the government to not apply to people who come in, that's just because there is no longer a transit rule to apply on a prospective basis. But the government is still under an obligation to identify those. Do all parties agree with that? Absolutely. We agree with the issue. I'm not sure what the basis would be. The rule's been rescinded, so the government isn't applying it to people who come into the country from the date of rescission point. So it's just a matter of finding those people who have the rule to apply to them, and in the words of the district court, reopening or reconsidering their cases. But it's going to be some number that's less than 26,000, perhaps. I don't know. I think it's certainly less than 26,000. To help me also understand, just to kind of dovetail on that, what was enjoined? Was it the metering rule, or was it the transit rule? So the preliminary injunctions, the two preliminary injunction orders were injunction orders that prevented the government first from applying a transit rule to those who would have entered the United States before the rule took effect, except for the fact that they were here. And the second preliminary injunction was in order to go back and find the people who had the rule permissively applied to them before the first PIO issue or while it was changed by this court, and to reconsider and reopen their cases. Those were all wrapped up into the final injunction, which is now part of the final judgment that's on the field. So that's the injunctive issue that's still on the field. There's also the declarative injunction that says that turnbacks are the issue. Should we just take the injunction for the fact that it's going on? So what is your understanding of what the injunction requires the government to do as the people who have actually been removed from the country, who are now in other countries? What do you think you have to do about this injunction? The government has to identify those people, and in the district court's words, reopen or reinterpret. So it's a fact-specific import, but the import of the injunction is it requires – sorry, but when you say identify those people, those people who were turned away under the metering rule, but then later made, purportedly made, but had the transit rule applied to them. That's right. It's individuals who would eventually be in the United States, but for the fact that they were – Isn't that doable, by the way? It's not easy. That was the focus of the preliminary injunction appeal. I think, though, if I could, there's much more at stake in this appeal than just the injunction for a reason unwinding past applications of the transit law. The district court reasoned that 1158 and 1225 apply to non-citizens who are outside of the United States. So as a practical matter, that interpretation of the statute has, I think, significantly far-reaching effects. One potential example of which was the injunction, at least at the court issue. But I just – I want to make sure that – Your position is believable. Well, and the granted summary. What makes it different is it wasn't likely to be successful in the merits, but just for granted summary judgment. Correct, correct. So that's just – that's the plaintiff's 706-1 argument. Correct. Before granted summary judgment for plaintiffs under 706-1, plaintiff had a due process remedy. And that entered the injunctive ruling as a due process remedy. So that's the full scope. So do we need to – do we need to decide that question? You had an alternative argument that, I guess, the reasonableness argument, which I guess the district court said was not properly before it. Is there a way we could rule on that and not address the 706-1 argument? I don't see how. The district court denied the 706-2 claim as loose in light of its decision on the 706-1 claim, which says that metering under any service is unlawful. So we're not even looking at whether metering is lawful in some cases but not others and maybe being implemented in an arbitrary or capricious manner. The district court held that 1158, 1225 imposed obligations on noncitizens outside the United States being deemed unlawfully, failed to comply with those obligations regardless of the circumstances. And that is the scope of the report total. So it didn't even say that maybe in some cases a court of entry might be overwhelmed and that might justify delaying the entry of some noncitizens. So let's apply that line of action. I have to follow up on Jeff Milne's question. Could this panel assume for the purposes of argument that the district court's reading of 1157 was correct? I'm not saying it is. It's assuming. But under 706-1, it was not a withheld action. Instead, it was a delayed action because there's been, as far as I can tell, almost no briefing of the district court on delay, certainly no analysis by the district court other than that footnote, which I'm still trying to understand exactly what was written below. So both parties are probably going to be asking that question. Why couldn't we do that? I can say we'll assume for the purpose of argument it applies. It's not withheld. It's delayed. There's been no analysis of delay in the track factors. That would still require the court to make the determination of whether the statute applies in the first place. Well, I think we assume. Let's say we assume it did for the purposes of the argument. Why can't we decide this case on delay and assume that the statute applies? I think the court only gets there if it determines that the statute applies to noncitizens outside the United States. No, I'm saying we would assume that it did. Right. This is the core of the government's appeal. I understand. I'm just saying that we make a call to argue on how we decide cases. So let's say we assume without deciding that their reading of the statute is correct. We're not hoping that it is. We're simply assuming that it is. But we say that even if that reading, their reading, is correct, it's not a withheld action. It's potentially a delayed action, and there's been no analysis of delay. If we're in a world where the court is assuming that 1225 was correctly interpreted by the district court, then yes, our argument is that the court should remand, or rather, the district court erred by not engaging in the arbitrary and capricious analysis. At this point, though, all of the policy memoranda that govern that implementation of metering has been rescinded and superseded. So our position is that that claim is actually moved for different reasons than what the district court said, but because an arbitrary and capricious claim looks specifically at the way that the government is acting. Right? It's determining whether it's... I think that those might be arguments for a different thing than I understand you to be answering. I think you're talking about 702. Of course. And he's talking, I think, about unreasonable delay. It seems like if the reasonableness of any delay has not yet been litigated, which seems to be the situation, I think he's asking, could we remand now to litigate the reasonableness of the delay? Exactly. Thank you for the clarification. I think the general response is still the same. Because the government... The factual record has changed. And so the way the government might have been implementing metering before, looking under the track factors, is no longer the way it's implementing the compliance with statutory obligations. So I think that would require the district court to basically reopen the case. Well, and I'm just wondering, because they're arguing in their briefs that it violates 706.1. The first heading in their brief is it violates 706.1. 706.1 says, withheld or unreasonably delayed. And it's unreasonable delay that's never analyzed. So it seems before we can even decide if it was a 706.1 violation, we have to decide whether it was withheld or delayed. And as far as I can tell, that in the House has never really happened. The district court has said that it would be unlawfully withheld. Our position would be that even if the obligation applies, this is a big movement. There's about 2,000 courts of entry. And the factual defenses that the government might raise at one court of entry on one day or one week or one month or whatever one slice of time you look at might be completely different from the factual defenses it might raise at another court of entry. Well, and how could the district court say that? Because, I mean, wouldn't that just show that whatever that number is, 126,000, none of them got back into the United States? Because if they appeared again and saw the sidelines, wouldn't that undermine the district court's holding? Or is that not analogous to that? I'm not sure it's analogous to what undermines the finding that it was unlawfully withheld on a class-wide basis. It's the fact that CBP continued to inspect individuals with inadmissibility during the time that it was in the ring and refer them for credible fear proceedings to USCIS. So just as a matter of understanding, but only if they felt within, only if they felt, you know, got the golden ticket, you know, they were first in line and met the metering restrictions. And I think the class members are, those individuals are excluded from the class, aren't they? They, the class of individuals who were turned back, there's no distinction between the rest. Right, and they're still seeking to have access to the asylum office, right? So they're the people who still don't have access, I thought. There may be, there may not be. But the class fight on terms has no ending. Right, right. But once someone gets asylum, they're no longer in the class, right? The definition itself excludes the people who actually are considered. I think that's right. Can I, I have a lot of questions on the track. I'm trying to go on the board, and I really don't understand the scope of what your obligations are. So I'm trying to figure out this reopening and reiteration. Like, what it actually means. So, for people outside of the country, can you go back to what you were saying, and figure out what your obligations are? To reopen and reiterate a proposed case, there's been a discussion between the parties in the district court about what that entails as to different non-citizens. That's the basis of, that is the direct command that the district court imposed. I can, I don't want to speak or misrepresent what exactly is going on below. There's been a lot of things that have happened since it's under judicial order. So I'm happy to provide a more supplementary briefing on what that might be, but I'm afraid I can't provide much more specific information about what requires this individual outside of the country. Okay, well, so how about inside, then? So, my understanding is, if someone's case, there seems to be a different way that different parts of the government may be defining this reopening and reconsideration. Like, if someone's case is still in progress, maybe it's just the BIA has a rule that's pending before that. Are you calling that reopening and reconsideration of cases in progress? I think you are. Our position is that if a case was still ongoing, if it's not final and closed, then it's not so much an ongoing, excuse me, not so much a reopening and reconsideration as it is just an interference with the way that immigration judges or asylum officers are applying the statute. But because the rules have been rescinded, like, there's really, I'm not even sure whether that situation is a fact or not, or if it's a fact. Well, that was what I was trying to ask, how many people are still affected? It seems like there shouldn't be that many cases that are still in progress where you would need to do something you didn't want to do. They should all be over as far as I can tell. I'm not sure whether, I think many of them are final and closed, and that's the issue with the order to reopen and rethink things. Okay, so you think there are people inside the United States who haven't actually been removed, but for whom you have to do some new asylum process? There may be, there certainly were. I'm not sure how many, if any, are still here, but there certainly were. So if you can't answer that, how do we know whether the injunctive part of any of this is moved? I think, I think, even if the government is going to comply with its obligations under the injunction, I don't think that automatically means the government can no longer appeal from that injunction. But even if that is what that meant, we're still appealing from the declaratory injunction. I understand that, and we can talk about that, but I'd like to just understand what the injunctive part of this, even so why, I really don't understand from any of your answers yet what the obligations are outside the country or inside the country, and who is at stake and how many at all. So maybe you could try again to explain what the stakes of injunctions are. Sure, for people inside the country who had the transfer rule applied to their case, or wouldn't have had it applied to their case if they had entered before the effective date because of migraine, the government has to identify them. So that's the first. Identifying them, though, doesn't seem like it interferes with anything. That's like an obligation, I don't see how that is barred by F1. But maybe not identifying, but the orders can reopen that when we need them. So the government, the court's order disturbs closed and final removal orders, or accident removal. So one of the two. So do you think back to the question about if it's still in progress, because we have a lot of cases to say we can decide things about what the rules for asylum are. It sounds kind of like you're saying you're not worried that the case is still in progress. Everything's OK with that. Is that what you're saying? Because I don't think that's what your brief said, or maybe that is what you're saying now. That was not what I intended to say. I think the cases that were in progress, I'm just not sure how many of those are still in progress, that an advertiser will plot them, because the rule has been extended. I think that's the perspective and application of the rule. Well, but the rule has been extended going forward. It hasn't been extended retroactively? No. No, not retroactively. I mean, isn't that the whole issue? Yes. So if a case is ongoing, while the rule was rescinded, and I'm not sure how many of those cases that there were, but if a case is ongoing while the rule is rescinded, that's a different factual situation than a case that closed, and then the rule was rescinded that later. The court's order that's still in effect applies to that group of cases, the one that closed, and then subsequently the transit rule was rescinded. So the government has to go back, find those people, and reorder and reconsider closed cases. That's precisely what 1252-S1 prohibits for all of them, and it also varies in 1252-A and E for expedited removal orders, and 1252-A5 and B-9 for orders in full removal proceedings. That's what those statutes prohibit. So for people who have a final court of removal that has not been reviewed, is there a step before the actual removal where the government makes sure that everything has been done properly in the proceedings? Is there some review of the file before you actually send someone out? I don't think in every single case, but there was, at one point, there was the development of a master list, and then kind of a calling down from there about which individuals might be subject to the district court's injunction on the perspective of what that perspective is. I guess I'm asking separately from this injunction. As a general matter, when someone has a final order of removal that hasn't been removed, before they're actually removed, is there some way to make sure that the files are valid and the keys are found? I don't think so. I think a final removal order is a final removal order, and it allows immigration and customs enforcement to effectuate that order. So I think unless there's perhaps a motion, sometimes there's different courts of appeals and different auto states, I don't want to make a categorical representation, but in terms of does ICE do anything on its own, I think unless there's some kind of administrative or judicial process separate, I don't know how to do that. So I don't know if you don't. Unless there's some kind of separate process that's going on, I think that the other, the final removal order, is a final removal order. Okay, so for people who are still saying we include the BIA, they're appealing to the BIA right now. You're not disagreeing. Well, maybe you are, but I'm going to tell you. Is there anything wrong with an injunction that tells the BIA that the asylum rule can't have the third-country transit rule, and so when you get this appeal, you can't apply it? Yes, because 1252-F1 prohibits class-wide injunctions that interfere with the way the government implements those covered provisions. Removal proceedings take place pursuant to 1229-A, which is a covered provision in F1. But if it's an asylum proceeding, they're not removed yet, right? I mean, we have things about collateral effects on asylum rules that say it is okay to have an injunction. I'm not understanding why this wouldn't fall under that, if it's just one asylum rule should be applied to the person when it's still in practice. That modification is readily assimilable to my case here. So, orders about the adjustment of status might be collaterally, have only a collateral effect on a rule. The injunction here is directed to asylum officers and U.S. CIS and immigration judges within the BIA, and it orders them directly, not administratively. It orders them directly. It says, you shall reopen or reconsider cases. Let's put aside the ones we've done. The ones that are still in progress. I think we have cases all the time that interpret the law as to asylum and other things. But, you know, what is wrong with a court saying what the asylum rules are and thus what the BIA and the FBI have to do? It could be about a social group, it could be about anything. I don't understand why, for cases that forget they're reopened, does the Supreme Court execute? Why does not court? So, for cases that might come to this court, through the PFR process, through A5 and B9, Congress specifically channeled jurisdiction to the courts of appeals. Specifically took district courts out of the picture. District courts are specifically removed from who may issue orders relating to removal proceedings. And the idea is that if there wasn't an attack there, by the BIA or an immigration judge in the removal proceedings, this court, the Appropriate Court of Appeals, would have jurisdiction to review all questions of law and fact, and want to go wrapped up in the final removal order and kind of zipped up to the court of appeals. If district courts can't enter class-wide injunctions, or really any injunctions, as to removal proceedings, that's what Congress intended. Because their point is that we have to deal with these kinds of cases. That would be what Congress said, and that the district court can't just enter. But how do we know? I think what's confusing me here, or what's troubling me, I don't even know, is that the district court says you have an affirmative obligation to go out and find the individual. I mean, if the district court says, your position is that the district court can't even say what it said. It doesn't have authority to act. But say we said that. Say we struck down, in one case comes out and says, the third-party transit rule is not consistent with the statute. Wouldn't you then, wouldn't the government then go in, based on our rule, and reopen those cases on its own? You're just saying it wouldn't be found by injunction. I think a couple points. Do you mean the sort of atypical position for a view of this court? Well, I think that's what, I mean, I'm just trying to follow your argument, that hey, we, Congress set up this scheme where we have to address these things individually. Okay. Let's say that this came up individually. What would your obligation have been then? If we had, say we, we wouldn't have issued an injunction, but say we decided the first case, and there were 10,000 behind it. Wouldn't the government have stepped in and said, oh, we might have certainly spoken. We need to step in and figure out what we do with these 10,000 cases. In that situation, there's not a classified injunction. So we're putting that aside. Generally, immigration judges comply with the law of the circuit. So if this court were in a properly filed PFR that issued that legal interpretation, I think you can presume, and I don't want to speak out of order, but I think you can probably presume that immigration judges in the normal course would account for that ruling in future PFRs. In terms of the direct order in that case, the direct order would just be removed to the Board of Immigration Appeals, which would then either review the case or renew it altogether. So in that specific case, it would be the actual proceedings would proceed with the court order. In future similar cases, whether they're on the circuit, then you can, I can probably, maybe presume, I don't want to speak out of order, but I think probably immigration judges would follow that. But that's not, I mean, does that happen? We haven't had a single case outside of, I mean, I don't understand why the plaintiffs haven't tried this, because they're like a belt of standards to come up with an individual case and bring this to the next circuit and determine how it applies in the case. There's no case where we address this issue. Well, let's look at the non-specific in the Mendoza-Lenares case. The issue in his case was he had an expedited order. So he charged the file of PFR, but there is no judicial review. There are 1252 ACA for orders of expedited removal. So that's kind of the difference. That's the hurdle there. That's one of them, right? That's for people with orders of expedited removal, who have a transitable flight schedule. The Mendoza-Lenares control says that no review of the expedited removal order, including the private peer determination, without exception. That's why they went to the district court to get classified. Because it couldn't be, the strategy I'm suggesting, they couldn't do this. I had a couple structural questions for you. First, if we were to agree with your reading of the statute, and back to the beginning, if we agreed 1157 your way, then as far as you're concerned, this case is over. That's right. It's over. It's done. All the stuff behind the declarative relief injunction, the scope of this injunction, that, if we decide the merits, don't worry about it. I understand. If we decide the merits they want the way they want, then we have to get into what that exactly means. If we decide the way you want, as far as you're concerned, the case is over. That's right. A merits decision in our favor means that the statutes don't apply to non-citizens outside the United States. Which means that the CDP has no obligation under 706-1 to inspect them. And that doesn't matter whether it's a Moffitt or Culver case, it doesn't matter because under the Norton decision, there has to be an obligation in the first place. So a merits decision in our favor speaks out to 706-1 and 706-2 claims. It does also with the due process claim. We have different grounds, and I can go into those. But the due process clause in our position is that the due process clause doesn't apply to non-citizens in another country. So there are, I think, the due process rights don't attach to class members who are still in Mexico. And even if they did once you come into the United States, the Mendoza-Linares decision confirms that the Constitution no legally rights that attach to those individuals or those given by Congress. That's the most successful. And if we were to find in your favor saying that the statutes do apply, but that the delay in implementing was reasonable, then I'd say the case is also over. I'm sorry, so if you were to... So if we were to say that the statutes, we can say there we get the statutes. But we say under 706-1 it wasn't without, and any delay was reasonable, therefore there's not a 706-1 violation, then this case is also over. That's right, that's the judgment we made. 706-1. Correct. 706-1 is what it's all against. But actually there's one that we're really, and there are other claims, the one we've been talking about is the 706-1. I'm not trying to complicate this case more. Class certification is not before us right now in terms of the field, but what is the status of the class certification? If the class is certified, we have a challenge that per se out of the four corners of the decision. I do think our standing brief talks about how at minimum, the decision, the relief that was granted to the class is overdrawn. But I think if the court were to find that at least one member of the class has standing to pursue the declaratory or injunctive relief, and trying to do this is to get penalized both. But if the court were to find that one member of the class has standing to pursue respectably, then maybe the court should just rise and reach the merits. Because I think, as your Honor pointed out, the merits are the test for interpretation. I was getting, excuse me, rising calls with the test for interpretation. Please. Do you have any argument that the interest of the devil does not have standing? 1252-F1 says that the only relief that can be granted is to non-citizens against whom, an individual non-citizen against whom proceedings have been issued. We didn't brief this. I recognize that. We don't necessarily concede it. I recognize we didn't brief it, but we think 1252-F1 could potentially cover that. But we haven't challenged that aspect. But that's kind of a different, I mean, you may call it jurisdictional that F-1 is a kind of conjunction to something, but that's really, I think, the merits argument. It doesn't seem like you have an argument that the interest of the devil doesn't have an ongoing agreement with the student at the time the case is filed isn't to cause grieving harm. Those things are satisfied, right? We have a way to go. We have a way to go. Okay, but that's not quite, that's not quite answering your question. With your officials, we kind of don't have to. If the interest of the devil is concretely harmed and has an ongoing injury, at least, I mean, maybe it doesn't mean it's harmed, but at least for standing at the time of the file, just those kinds of problems, it's still outside. So we don't raise any argument about the juris facts. It's more just a redressability. Which really is like what you can get with F-1. But in terms of article 3 standing, you are saying that features devil has article 3 standing. We didn't challenge that on appeal. I can't say on appeal. We can't say it wasn't challenged on appeal, so we assume it. We actually have to decide. So you kind of need to give us an answer. Do you believe that features devil has article 3 standing? The district court said that, I think this is a puzzling aspect of the remedy that they need, the district court said that 1252-F-1 only permits for weakness for individual offenses and against whom we perceive to be an issue. The features devil is not a person against whom we perceive to be an issue. So their addressability argument applies to her as well. But you think she does not have article 3 standing because of the addressability issue. Just because you think there's merit in saying that invention is not being available. Right. And if the court disagrees with that issue, go ahead and mention that. I think the merit is the quickest way through. You don't want to have to go out on a jurisdiction. You've got to be a little more categorical. We can't just give you a merit-based rule because you want one. We actually have to have the power to do that. It's kind of like in the Constitution and stuff. What is the basis? You're just saying it's only the addressability issue. I think it's the plaintiff's case. It's our burden to show appeal. It's the case that would roll us into the merits. It is true sometimes standing in merits. What would be the case that you would point us to to say this should be analyzed as a merits decision rather than a standing decision. This court reached a decision in OLAM. If the court satisfies at least one plaintiff in a class as standing for perspective then the court need not decide whether everyone has standing. That means at least one person has standing. I think the court is going to have to back up here. I'm sure we have more questions for you. Thank you for hanging in there for 30 something minutes. We are going to put 15 on the clock. I understand you go over and you are not stealing time from your co-counsel. You don't start panicking until you get to 17 or 18. Is there anyone else coming in? Are we clear? You may proceed. Thank you your honor. Melissa Crow on behalf of a police prof appellant. I'm going to address the claims under APA 706 1 and 706 2 as well as the injunction. My co-counsel will address the process and non-statutory review claims. The defendants have mischaracterized the issues in this case, the law and the record. The critical issue in this case is whether the defendants can obey their mandatory statutory obligation to inspect and process the silent speakers by blocking them from stepping foot on U.S. law enforcement. I understand why you reframed it that way, but I think with all due respect, you are the one that should be framed up. Why can't they? The statute seems very clear that they have to enter the United States. Tell me any case that says the immigration laws under 1158 apply outside     States? What is the difference between 1158 and 1225 distinguished between people who are physically present in the U.S. and people who are arriving in the U.S.? What is the difference? Arriving in the U.S. means coming into the United States. Does it mean you have to enter the United States? I would like to address the government's argument about the entry fiction, which is a theory that I think the government came up with because neither the law nor the facts are on their side. There is no case in the history of the United States that supports your position. You are trying to argue that 1158 applies outside  States. You can't point to a single case. You have to stop casting aspersions on the government. You are asking us to stretch the law. Maybe we should, but that doesn't mean the government is not being authentic in the argument. We are only talking about individuals here who would have arrived. But they did not arrive. They did not arrive because of the government's obstructive policies. They did not arrive. That is the statute that states it. Where does the statute say that the government cannot set up prohibitions on them getting in? The statute does not give them authority to do that. The statute requires them to inspect when they come into the United States. We disagree with that interpretation. But you don't have a single case to support you. This is the first time as far as we know that the government has turned back individuals at ports of entry. When we first started this case back in July of 2017, the turnbacks were actually happening on U.S. soil. That is a different case, right? It is the same case. The government in those days used a variety of tactics to turn individuals back to Mexico. Once they    those tactics included physical force, misinformation, people were told that they would be separated from their family, and so on. And the government  that they would be separated from their families. Those facts are part of the record. Sometime after we filed this case, the government changed its practice, and it moved its officers to the limit line, to the actual border. They read the law, they said you don't have asylum, and they made sure that didn't happen. I don't understand what the problem is with that. The problem is that if you read the statute in the way the government is proposing, it is redundant. If I may take a quick look at the plain language of the statute. Prison is not defined under the territorial bounds of the United States. And 9th Circuit precedent in the form of Barrio v. Holder 581 S. 3rd 849 confirms that this is the correct reading of the term. That physical presence is not a term of art. It has to be defined based on its plain meaning, which is the  presence of a person inside the territory of the United States. By contrast, with physically present, which is a static concept, the district court bound that arrives in denotes a process of arrival that encompasses those who would have arrived, but for the district court. So, under your theory, when does that change? 5 feet from the border, 10 feet from the border, 100 yards from the border, 10 miles from the border? Generally speaking, it clicks in as a 9th Circuit panel that considered our same motion     in the United States. 1157 applies to those outside the United States. 1157 relates to overseas resettlement of refugees. 1158 applies to asylum seekers who are seeking protection here in the United States. In the United States? We don't dispute that the process of seeking protection occurs in the United States. The issue that we are litigating here is whether the government  unilaterally decide that certain individuals aren't allowed to come to the United States to seek protection. If you accept the government's interpretation of 1158 and 1225, it would give the executive branch authority to unilaterally end the asylum process at ports of entry, which would violate the overall statutory scheme governing the inspection and processing of asylum in the United States. It seems to me there is a second problem for you in this case. The district court believes that turning them away was a violation. There was no discussion by the district court about why this is withheld versus delay. There are all kinds of cases that talk about this. First, I didn't see anything in the district court discussing that. Am I right about that, that discussion didn't happen? I believe that the district court felt that once it had decided that it turned back constituted a withholding of mandatory action, it didn't need to get the issue of delay. I didn't see the district court explain why it wasn't delay as opposed to withheld. So, that analysis would depend on the track factors. Am I happy to go through that analysis? I appreciate that you guys briefed it. The district court never went through those factors, but it seems to me that that analysis hasn't happened yet. Even if you're right on the statute, you're in a tough spot. But if you're right on the statute, we saw there's still parts of this case that have never really been briefed, litigated, nothing. Your Honor, part of the reason that the district court found that this was a withholding of agency action and didn't feel that it needed to get to the issue of delay is that there was never a guarantee that people could come back to a port of entry and be inspected and processed. The CBP officers at the limit line simply said go away, we don't have capacity to process you. And yet the record clearly shows that they did have capacity to process. Your Honor, I don't think so. You just said the record, but the district court never issued some re-judgment on the issue of delay versus withheld. Well, they did issue some re-judgment on the issue of withholding. But we're not analyzing whether this goes to the delay line, correct? It's an either or for a   We're not analyzing it as delay. There are some times where Congress will say you must have this report done by January 2010 and nine years later the EPA still hasn't done it. That might be delay. Or if they say I'm not going to do it, I'm not doing it. If you're  do it, you're going to have to convince us at least that there should have been an analysis of delay. This is not the time or place. There's no way that this panel on this record can analyze that. Do you think we can? Based on the three pages of briefing that we have on that issue? You might require a supplemental briefing on that issue. To go there, isn't it inherently a factual question, which we would normally remand to the district court if we went this route? If you went that route, I think it would be helpful to go there. I understand your argument on that. In order to find a favor, wouldn't we have to say that every single time we turn them away, they actually had capacity before just lying about it? We have pretty compelling evidence. I have no doubt that you can come up with some evidence and maybe a lot. But that's where the problem is. We don't know. We're talking about 26,000 people, potentially. Your Honor, the office of  general also issued a report confirming that VHS was artificially limiting the flow of migrants at the southern border. Rodney Harris, who was the director of the  Health, said that VHS was artificially limiting the flow of migrants at the southern border. The Department of Health issued a report confirming that VHS was artificially limiting the flow of migrants at the southern   Department of    flow of  at the southern   Department of Health issued VHS  artificially limiting the flow of  at the southern Department of Health issued a report confirming that VHS was artificially limiting the flow of migrants at the southern   issued a     was artificially limiting  flow of migrants at     VHS was artificially limiting  flow a report confirming that  was artificially limiting the flow of migrants at the southern Department of Health issued a report confirming that VHS was artificially limiting the flow of    Department of      VHS was artificially limiting  was artificially  the flow of migrants was artificially limiting the  migrants issued a report confirming  VHS was report confirming VHS was artificially limiting the flow of migrants at the southern  of Health of migrants at the  Department of      limiting the  migrants at the southern  limiting   migrants at the southern southern Department of Health issue a report confirming VHS the   of Health issue a at the  Department of Health issue southern Department    confirming VHS was artificially of Health issue a  confirming VHS was    VHS was artificially limiting   migrants at the a  confirming VHS was artificially artificially limiting the  migrants at Health issue a report  VHS was artificially limiting confirming VHS was artificially    migrants at the away from them? We can't just say one person was delayed by the other person.      was delayed by the other person. We can't say one person was delayed by the  person.  can't say one person was delayed by the other person. One person was delayed by the other person. We can't say one person was delayed by the  person. We can't say one person was delayed by the other person. We can't say one person was delayed by the other person. We can't say one person  delayed by the other person. In that case, it might be a lot. If you have 10,000 and the post office says you can come back tomorrow or the next day, you are looking at all the post offices within the state. You   one person was delayed by the other person. In that case, you can't say one person was delayed by the other person. You have a challenge that all the other people are similar to that person. I understand how you say that now. The district court said it was confined analysis to discrete questions and to its credit, we think it was wrong. Because it was wrong, we should be entitled to present our defense about the delay. Wouldn't you have to appeal the class certification? I understand the idea that the class is uniform after this. I see my time is up. Because the belief that the court issued is over grown, the decision is done. Just looking at the question of delay, the court could make that determination but it couldn't say the delay. It didn't reach that. The whole class is the same as the main class. The court should decide the legal issue.     If not, we still have to make the decision. The court should decide the legal issue. The court should   decision. The court should allow the individual defense to reconsider the classification. I have APS points and due process points. We have a briefing on those points. Do you have any questions? All right. I think we are good. I want to thank the lawyers and counsel. I appreciate the pro bono efforts. I want to thank the security officers for literally standing by. I want to thank the court staff from Pasadena. Thank you for making this all possible. Thank you for sitting through the whole time. This case is submitted. This special session is adjourned. Thank you. All right.    you. Thank you. All right. Thank you. This court for this session stands adjourned.
judges: OWENS, FRIEDLAND, NELSON